IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| CAROLINA CONDUIT SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:11CV133–HEH |
| ) | |
| MASTEC NORTH AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
(Defendant's Motion for Summary Judgment)

In this lawsuit, Carolina Conduit Systems, Inc. ("Carolina Conduit") has sued MasTec North America, Inc. ("MasTec") for breach of contract and in the alternative, quantum meruit. The dispute concerns whether Carolina Conduit is entitled to recover the cost of certain work performed and services provided to MasTec in connection with a construction project. Carolina Conduit's complaint alleges breach of contract, or in the alternative, quantum meruit and unjust enrichment. This matter is now before the Court on a Motion for Summary Judgment filed by MasTec. The parties have submitted detailed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process. For the reasons discussed herein, MasTec's Motion will be granted in part and denied in part.

## I.

This breach of contract action arises out of a Subcontractor Agreement (hereinafter "Subcontract") entered into by both parties for the construction of a duct system and improvements to an underground conduit system in Norfolk, Virginia. The undisputed facts are as follows. Prior to October 2008, MasTec entered into a contract with Dominion Virginia Power ("DVP") to relocate and improve existing underground conduit in conjunction with the construction of the Hampton Roads Transit – Norfolk Light Rail. In October 2008, MasTec contacted Carolina Conduit, who is engaged in the business of underground construction, to solicit Carolina Conduit's assistance with the project. (Pl. Carolina Conduit Systems, Inc.'s Br. Opp'n Def. Mastec North America, Inc.'s Mot. Summ. J. [hereinafter "Pl. Br."], Ex. A-1 ¶ 3.) At that time MasTec informed Carolina Conduit's president that the project was a "design build project" and MasTec anticipated that Burgess & Niple, Inc. ("B&N") would serve as the designer. *Id.* Prior to 2008, Carolina Conduit had worked with MasTec on a number of projects, typically without a written contract. *Id.*

After agreeing to work on the project, Carolina Conduit began to develop an estimate based on the schematic drawings prepared by DVP. *Id.* at ¶ 5. In early December 2008, B&N produced the first set of approved drawings, and on December 15, 2008, Carolina Conduit began construction on the project. By December 19, 2008, Carolina Conduit had encountered problems in the field, and had determined that the "project could not be built as designed." *Id.* at ¶ 15. In particular, while the design

drawings showed certain duct banks in the vertical configuration, field conditions necessitated the construction of a number of duct banks in the horizontal configuration, which required the use of additional flowable fill. *Id.* at ¶ 17. In December 2008, Carolina Conduit's president and project manager met with MasTec employees who informed Carolina Conduit "not to worry" about the costs incurred by the excess flowable fill, because plenty of funds were available. *Id.*

Carolina Conduit continued to work on the project throughout the spring, and on April 23, 2009, the parties executed a formal written contract. According to Carolina Conduit, the Subcontract price and scope of work was based upon the assumption that the duct banks would be built in the vertical configuration. *Id.* at ¶ 19.

On May 18, 2009, Carolina Conduit's president contacted MasTec regarding various problems encountered during the course of construction. At that time, he also informed MasTec that the extra cost of the horizontal duct banks had not been addressed. According to Carolina Conduit's president, MasTec's vice president again informed him "not to worry" about the extra cost and that Carolina Conduit would be compensated. *Id.* at 20.

At the close of the project, Carolina Conduit alleges that MasTec refused to pay for the excess flowable fill required in the horizontal duct banks. Additionally, Carolina Conduit alleges that it incurred various other additional expenses that MasTec now refuses to cover. Specifically, Carolina Conduit contends that it has not been paid for expenses related to lost parking meter revenues, the provision of specialty signs, and the

provision of certain off duty police officers beyond what the project originally contemplated. Carolina Conduit initially filed a complaint against MasTec in North Carolina's Johnston County Court on December 20, 2010. On February 4, 2011, MasTec removed the case to federal court based on diversity jurisdiction. Because the complaint arises out of a construction dispute concerning a project located in Virginia, MasTec also filed a Motion to Transfer Venue. Defendant's Motion was granted on February 25, 2011, and the case was transferred from the U.S. District Court for the Eastern District of North Carolina to this Court. On September 6, 2011, MasTec filed a Motion for Summary Judgment.

## II.

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if the evidence, when viewed "in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the movant meets this initial burden, however, the

nonmoving party may not rest upon mere allegations in the pleadings, but instead "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e))[1] (emphasis in original). The absence or presence of a genuinely disputed fact must be demonstrated by "citing to particular parts of materials in the record,"[2] or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

It is well established that the mere existence of some factual dispute will not necessarily defeat an otherwise properly supported motion for summary judgment; rather "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–4 9, 106 S. Ct. 2505, 2510 (1986). Whether a fact is considered to be material is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Id.*

---

[1] Fed. R. Civ. P. 56 was revised in December 2010. This case quotes an older version of the rule.
[2] This includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A)

5

### III.

MasTec contends that summary judgment is appropriate on the breach of contract claim because the extra work and services provided by Carolina Conduit clearly fell within the scope of the Subcontract. Furthermore, in the event that matters arose outside of the scope of the Subcontract, it included a specific provision governing changes to the scope of work. (Def. MasTec North America, Inc.'s Br. Supp. Mot. Pursuant Fed. R. Civ. P. 56 Summ. J. [hereinafter "Def. Br."] at 5–6.) In response, Carolina Conduit provides a multitude of counter-arguments including allegations of contract ambiguity, oral modification to the contract, and modification through the course of dealings.

The Subcontract entered into by the parties contains a choice of law provision which designates Virginia law as the governing law. *Id.* at 3. Under Virginia law, contract interpretation is a question for the court, and summary judgment "is appropriate for a contract claim if the contract is unambiguous." *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir.1992) ("[i]f a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue."). Generally, "the construction [of a contract] adopted should be reasonable", thereby avoiding illogical results. *Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F.Supp.2d 840, 860 (E.D. Va. 2003) (quoting *Transit Ca. Co. v. Hartman's, Inc.*, 218 Va. 703, 708, 239 S.E.2d 894 (1978)).

Turning first to Carolina Conduit's claim related to the provision of excess flowable fill, the Subcontract clearly provides that Carolina Conduit would be responsible for providing "all material, equipment, tools and labor necessary to complete the [project]". (Def. Br., Ex. 5 ¶ 2.) Moreover, the Subcontract explicitly states that the parties agreed to a fixed price of $4,403,220, which would include "all backfill in the street to be flowable fill". *Id.* at 66.) While the Subcontract states that "Carolina Conduit shall utilize the Schematic Layout drawings dated May 8, 2008 provided herein by DVP as the basis for developing bid price", Carolina Conduit was well aware of the construction requirements at the time the parties executed the Subcontract. Based on Carolina Conduit's own admissions, it first learned that some of the duct banks would require construction in the horizontal configuration in December 2008, over four months before signing the Subcontract. (Pl. Br., Ex. A-1 ¶ 17.)

Notwithstanding Carolina Conduit's knowledge of the construction challenges, the Subcontract also explicitly specifies that "any additional work outside the original scope of work shall be handled through a change order specifying pricing and/or Unit prices approved by DVP". (Def. Br., Ex. 5 ¶ 66.) Virginia law provides that contractual provisions containing written change order requirements are binding upon the parties to the contract. *Atlantic & Danville Ry. v. Delaware Constr. Co.*, 98 Va. 503, 37 S.E. 13, 16 (1900) (noting that such provisions are "obligatory upon the parties, and not to be disregarded"). Contractual provisions requiring "written change order requirements maintain order and predictability in the construction business, and are meant to avoid

7

subsequent disagreement" and prevent controversy. *Artistic Stone Crafters v. Safeco Ins. Co.*, 726 F.2d 595, 602 (E.D. Va. 2010). For this reason, "where there is a method under the contract by which a party can insure the recovery of the cost of extra work, that party is not entitled to recovery where it fails to follow that method." *Pennsylvania Elec. Coil, Ltd. v. City of Danville*, No. 4:06 cv80, 2008 WL 919535, at *6 (W.D.Va. Apr. 4, 2008) (citing *Main v. Dept. of Highways*, 206 Va. 143, 142 S.E.2d 524 (1965); *Kirk Reid Co. v. Fine*, 205 Va. 778, 139 S.E.2d 829 (1965)); *see also Perry Eng'g Co., Inc. v. AT & T Comm., Inc.*, No. 90-0153, 1992 WL 201944, at *4 (W.D.Va.1992) (holding that written change order requirements protect contractor from "the danger that verbal orders for significant changes could result in disputes over the extent of the work to be done as well as the price to be paid for such changes").

In the instant case, Carolina Conduit has failed to provide any evidence that it submitted change orders for the excess flowable fill at issue, or that MasTec approved of the changes and then failed to cover the excess expenses. While Carolina Conduit contends that the contract documents are based on a vertical configuration for the duct banks which required less flowable fill, (Pl. Br. at 13–14), this fact does not absolve it of the responsibility to submit change orders and obtain MasTec's approval. Regardless of whether the Subcontract or any underlying drawings were ambiguous, as alleged by Carolina Conduit, it failed to follow the method specified in the contract.

Additionally, Carolina Conduit's arguments that the parties orally modified the contract, or in the alternative, modified the contract through their course of dealings are

without merit. Carolina Conduit carries the burden to show that the written change order requirement has been modified, *see Serv. Steel Erectors Co. v. SCE, Inc.*, 573 F. Supp. 177, 179 (W.D.Va.1983), and such waiver must be shown through "clear, unequivocal, and convincing evidence." *Pennsylvania Elec. Coil, Ltd.*, 2008 WL 919535, at *7 (quoting *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73, 306 S.E.2d 870 (1983)). In this case, the only evidence that MasTec may have waived the change order requirement are two conversations between Carolina Conduit's president and a MasTec employee, where the employee allegedly informed Carolina Conduit "not to worry" about the increase in flowable fill required. (Pl. Br. At 15.) Carolina Conduit, however, submitted multiple change orders during the course of the project, and continued to submit change orders after the close of the project with respect to other requirements. Therefore, Carolina Conduit has failed to meet its burden of providing clear and convincing evidence of any intent to waive the provision.[3]

Similarly, Carolina Conduit has failed to provide sufficient evidence that the parties modified the Subcontract through their course of dealing. In contrast to the cited cases, where the parties "ignored provisions as to written orders and proceeded with the work with little or no regard for them" from the beginning of the contract, *Ross Eng'g Co. v. Pace*, 153 F.2d 35, 49 (4th Cir. 1946), Carolina Conduit has not offered any other instances where MasTec disregarded the change order provision as to this project. As a

---

[3] Despite Carolina Conduit's arguments to the contrary, the immediate case has little similarity with *Cardinal Dev. Co. v. Stanley Constr.*, 255 Va. 300, 497 S.E.2d. 847 (1998), where a building plan was altered to increase the number of lots constructed from 42 to 62.

result MasTec's Motion for Summary Judgment as to the breach of contract claim for excess flowable fill is granted.

Turning to the breach of contract claim for expenses associated with the provision of excess police officers, Carolina Conduit alleges that it was charged for providing off duty police officers at intersections outside of the specified work area. (Pl. Br. at 21.). According to Carolina Conduit, these extra officers were deemed necessary by the City of Norfolk. The Subcontract, however, explicitly states that "Carolina Conduit will meet the requirements for maintaining ... traffic through the areas of construction". (Def. Br., Ex. 5 ¶ 22.) Further, "[u]niformed off duty Police Officers shall be utilized instead of Flagmen at signalized intersections." *Id.* Therefore, under the Subcontract, Carolina Conduit unambiguously bore the cost of the off duty officers. Any claim of Carolina Conduit's for being overcharged is more appropriately directed at the City of Norfolk. Consequently, because there is no genuine issue of fact, MasTec's Motion for Summary Judgment as to the breach of contract claim related to the provision of excess police officers is granted.

Summary judgment will also be granted as to Carolina Conduit's breach of contract claim for the provision of specialty signage. As stated above, the Subcontract placed the burden and cost of traffic maintenance on Carolina Conduit, including the provision of signs. *Id.* Thus, the provision of all signs, including specialty signs, arguably fell within the scope of the project. Even if, however, the specialty signage represented an additional expense, the Subcontract required Carolina Conduit to submit a

written change order. Carolina Conduit has provided no evidence that such an order was submitted and approved. Therefore, MasTec's Motion for Summary Judgment is granted with respect to this portion of the breach of contract claim.

The Court next addresses the section of MasTec's Motion concerning the breach of contract related to parking meter fees. MasTec contends that Carolina Conduit should have submitted a change order request for the parking meter fees. The Subcontract, however, explicitly provides that MasTec and B&N would be responsible for ensuring that all permits were submitted to the City of Norfolk. Furthermore, the Subcontract states that "MasTec shall pay for all permits and permit review fees." (Def. Br., Ex. 5). Based on this language, it appears that MasTec arguably assumed the responsibility for paying the parking fees. At the very least, the Subcontract is ambiguous as to what is included by the phrase "permit and permit review fees." For this reason, summary judgment is not warranted as to this portion of the breach of contract claim and is consequently denied.

Turning finally to the equitable claim for relief under a theory of quantum meruit, Carolina Conduit argues that MasTec will be unjustly enriched if it is not required to pay for the extra work and services provided. Under Virginia law, "[w]here a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie." *WRH Mortgage, Inc. v. S.A.S. Associates*, 214 F.3d 528, 534 (4th Cir. 2000). Moreover, where a contract plainly contemplates claims for additional work and provides a method for making such claims,

such extra work falls within the scope of the contract. *See Artistic Stone Crafters v. Safeco Ins. Co.*, 726 F.2d 595 (E.D. Va. 2010).

As discussed previously, the Subcontract unequivocally covers all materials, including flowable fill, as well as the provision of off duty officers and traffic signs. The Subcontract also contains a provision requiring written change orders. Therefore, any additional work or services provided by Carolina Conduit should fall within the scope of the Subcontract or its modification provision, thus precluding any claim for quantum meruit or unjust enrichment. For those reasons, summary judgment is granted as to Carolina Conduit's quantum meruit claim for the expenses related to the flowable fill, additional police officers, and specialty signs. Because of the ambiguity surrounding the terms "permit and permit review fees", however, it is unclear whether the fees from lost parking meter revenues were included or contemplated by the Subcontract. As a result, this portion of MasTec's Motion for Summary Judgment is denied and Carolina Conduit's claim for quantum meruit as to that expense remains.

## IV.

For these reasons, MasTec's Motion for Summary Judgment will be granted in part and denied in part. The Motion is granted as to the breach of contract and quantum meruit claims arising out of the provision of excess flowable fill, additional off duty police officers, and specialty signage. The Motion is denied as to the breach of contract and quantum meruit claims arising out of the payment of lost parking meter revenues.

This Memorandum Opinion accompanies the Court's Order issued on October 17, 2011 (Dk. No. 63).

                                                    /s/
                                      Henry E. Hudson
                                      United States District Judge

Date: Oct. 24, 2011
Richmond, VA